## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TAMMIE MARQUEZ,** ) | |
| and ) | |
| **NEESHA PEREZ,** ) | |
| and ) | |
| **JOSIAH CHUMBA,** ) | |
| On behalf of themselves and others similarly ) | |
| situated, ) | |
| Plaintiffs, ) | |
| ) | Case No. 2:19-cv-02362-DDC-JPO |
| v. ) | |
| ) | |
| **MIDWEST DIVISION MMC, LLC,** ) | |
| and ) | |
| **HEALTHTRUST WORKFORCE** ) | |
| **SOLUTIONS LLC,** ) | |
| and ) | |
| **HEALTH MIDWEST MEDICAL GROUP,** ) | |
| **INC.,** ) | |
| and ) | |
| **HEALTH MIDWEST VENTURES GROUP,** ) | |
| **INC.,** ) | |
| ) | REQUEST FOR JURY TRIAL |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW, Plaintiffs Tammie Marquez, Neesha Perez, and Josiah Chumba, and on behalf of a class of others similarly situated, by and through their attorneys, as a matter of course pursuant to Fed. R. Civ. Pro. 15(a)(1)(A), and for their First Amended Complaint for Damages against Defendants Midwest Division MMC, LLC (hereinafter "Midwest"), HealthTrust Workforce Solutions LLC (hereinafter "HealthTrust"), Health Midwest Medical Group, Inc. (hereinafter "Health Medical"), and Health Midwest Ventures Group, Inc. (hereinafter "Health Ventures"), and allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action against Defendants for unpaid compensation and related penalties and damages. Defendants predominantly provide health care services.

2. Pursuant to their company-wide policies and procedures, Defendants failed to pay Plaintiffs, and others similarly situated, for all hours worked and in violation of federal mandated minimum wage and/or overtime wage.

3. Defendants Midwest Division MMC, LLC and HealthTrust are nursing agencies that assign or assigned Plaintiffs Marquez and Perez, and others similarly situated, to perform work for Defendants Health Medical and Health Ventures at Menorah Medical Center in Overland Park, Kansas.

4. Plaintiff Chumba and others similarly situated performed work directly for Defendants Health Medical and Health Ventures, a healthcare system, at Menorah Medical Center in Overland Park, Kansas.

5. Plaintiffs, on behalf of themselves and others similarly situated, bring this lawsuit as: (1) a collective action under the Fair Labor Standards Act, (hereinafter "FLSA"), 29 U.S.C. §201 et. seq., to recover unpaid minimum and/or overtime wages owed to Plaintiffs and others similarly situated; and (2) a class action under common law for unjust enrichment and quantum meruit to recover unpaid compensation for all hours worked owed to Plaintiffs and others similarly situated.

6. Plaintiffs consents to be Party-Plaintiffs pursuant to 29 U.S.C. 216(b) are attached to this Complaint as Exhibit 1.

**PARTIES**

7. Plaintiff Marquez is a female citizen of the United States, residing in Olathe, Johnson County, Kansas. Plaintiff Marquez works at Defendants' place of business located in Overland Park, Johnson County, Kansas.

8. Plaintiff Marquez has been employed by Defendants since on or about June 5, 2007, her hire date.

9. Plaintiff Perez is a female citizen of the United States, residing in Gardner, Johnson County, Kansas. Plaintiff Perez works at Defendants' place of business located in Overland Park, Johnson County, Kansas.

10. Plaintiff Perez has been employed by Defendants since on or about November 5, 2017, her hire date.

11. Plaintiff Chumba is a male citizen of the United States, residing in Raytown, Jackson County, Missouri. Plaintiff Chumba works at Defendants Health Medical and Health Venture's place of business located in Overland Park, Johnson County, Kansas.

12. Plaintiff Chumba has been employed by Defendant Health Medical and Health Venture since approximately 2011.

13. Plaintiff Marquez and Defendants agreed Plaintiff Marquez's current hourly rate for straight time is forty-three dollars and fifty cents ($43.50), plus an additional two dollar ($2) differential for work performed on weekends or nights.

14. Plaintiff Perez and Defendants agreed Plaintiff Perez's current hourly rate for straight time is forty-three dollars and fifty cents ($43.50), plus an additional two dollar ($2.00) differential for work performed on weekends or nights.

15. Plaintiff Chumba and Defendants Health Medical and Health Ventures agreed Plaintiff Chumba's current hourly rate for straight time is thirty-seven dollars and thirty cents ($37.30), plus an additional two dollars ($2.00) to three dollars and fifty cents ($3.50) differential for work performed on weekends, nights, on-call, or other various shifts.

16. Others similarly situated for the purposes of this collective and/or class action, also perform and/or performed work for Defendants at Menorah Medical Center.

17. Defendant Midwest is a limited liability company organized under the laws of the State of Delaware, whose principal office is located in Overland Park, Johnson County, Kansas.

18. At all relevant times, Defendant Midwest was authorized to conduct business in the State of Kansas, and was conducting business in the State of Kansas.

19. Defendant HealthTrust is a limited liability company organized under the laws of the State of Tennessee, whose principal office is located in Overland Park, Johnson County, Kansas.

20. At all relevant times, Defendant HealthTrust was authorized to conduct business in the State of Kansas, and was conducting business in the State of Kansas.

21. Defendant Health Medical is a corporation organized under the laws of the State of Missouri, whose principal office is located in Overland Park, Johnson County, Kansas.

22. At all relevant times, Defendant Health Medical was authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

23. Defendant Health Ventures is a corporation organized under the laws of the State of Missouri, whose principal office is in Overland Park, Johnson County, Kansas.

24. At all relevant times, Defendant Health Ventures was authorized to conduct business in the State of Kansas and was doing business in the State of Kansas.

25. At all relevant times, Defendants are a part of a single integrated enterprise so that, for all purposes, they are only a single or joint employer of Plaintiffs and others similarly situated with substantial interrelation of operations, common management, and common control over personnel practices, centralized control of labor operations, and common ownership and/or financial control.

26. Defendants all had the power to hire and fire Plaintiffs and others similarly situated; supervised and controlled the work schedules and conditions of employment of Plaintiffs and others similarly situated; determined the rate and method of payment for Plaintiffs and others similarly situated; and maintained employment records (including time clock records) for Plaintiffs and others similarly situated.

27. At all relevant times, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## JURISDICTION AND VENUE

28. This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq, as well as 29 U.S.C. §216(b).

29. The United States District Court for the District of Kansas has personal jurisdiction because Defendants conduct business within the District of Kansas.

30. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because these state claims are so related to the FLSA claims that they form part of the same case or controversy.

31. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), inasmuch as the Defendants have facilities, conduct business and can be found in the District of Kansas, and the causes of action set forth herein have arisen and occurred in part in the District of Kansas. Venue is also proper under 29 U.S.C. §1132(e)(2) because Defendants have substantial business contacts within the District of Kansas.

32. At all relevant times, Defendants have been "employer[s]" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. §203. At all relevant times, Defendants have employed "employee[s]," including the putative representative action Plaintiffs and those persons situated similarly to the Plaintiffs as described herein. At all relevant times, Plaintiffs and the other members of the class were engaged in commerce and/or worked for Defendants, which is an enterprise engaged in commerce.

33. Plaintiffs are under information and belief that damages are in excess of five million dollars ($5,000,000.00).

## COLLECTIVE AND CLASS ALLEGATIONS

34. Plaintiffs Marquez and Perez held the positions of Registered Nurses for Defendants.

35. Plaintiff Chumba held the position of Registered Nurse for Defendants Health Medical and Health Ventures.

36. Defendants have failed and continue to fail to compensate its employees for all of the time for work they performed, an integral and indispensable part of the principle activities of performing their jobs.

37. Plaintiffs and others similarly situated were not properly compensated for all work performed on behalf of Defendants at the applicable rate of pay.

38. The FLSA requires each covered employer, such as Defendants, to compensate all employees for services performed and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

39. Plaintiffs bring Count I, the FLSA claim, arising out of Defendants' unlawful policies and practices, as an "opt in" collective action pursuant to 29 U.S.C. §216(b) on behalf of themselves and the following class: All persons currently and formerly employed by Defendants in hourly nursing positions who performed work without adequate compensation at any time during the last three (3) years at Menorah Medical Center.

40. Plaintiffs, individually and on behalf of others similarly situated, seek relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

41. Plaintiffs bring Count II, the unjust enrichment claim, arising out of Defendants' unlawful policies and practices, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class: All persons currently and formerly employed by Defendants in hourly nursing positions who performed work without adequate compensation at any time during the last five (5) years at Menorah Medical Center.

42. Plaintiffs bring Count III, the quantum meruit claim, arising out of Defendants' unlawful policies and practices, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class: All persons currently and formerly employed by Defendants in hourly nursing positions who performed work without adequate compensation at any time during the last five (5) years at Menorah Medical Center.

43. Count I brought by Plaintiffs on behalf of themselves and others similarly situated, seek relief on a collective basis challenging, among other FLSA violations, Defendants' practice of failing to accurately record hours worked by the Plaintiffs and by others similarly situated and Defendants' practice of failing to pay Plaintiffs and others similarly situated for all hours worked at a proper, legal rate, including overtime compensation. The number and identity of other Plaintiffs yet to opt-in and consent to be Party-Plaintiffs may be determined from the records of Defendants, and potential Party-Plaintiffs may easily and quickly be notified of the pendency of this action.

44. Counts II-III brought by Plaintiffs on behalf of themselves and others similarly situated, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

45. The Rule 23 classes satisfy the numerosity standards on the good faith belief that each class will number over hundreds or thousands of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail, electronic mail and/or posting of approved notice.

46. There are questions of fact and law common to the classes, between classes and within each class, which predominate over any questions affecting individual members. The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

    a. Whether Defendants violated the law when they failed to pay Plaintiffs and class members for all hours worked;

    b. Whether Defendants had policies and practices of failing to compensate Plaintiffs and class members for all time worked;

    c. Whether Defendants knew or had reason to know such policies and compensation practices were unlawful;

    d. Whether Defendants failed to pay Plaintiffs and class members overtime compensation required under FLSA;

    e. Whether Defendants retained a benefit from such unlawful policies and compensation practices;

    f. Whether Defendants retained a benefits and were unjustly enriched by virtue of their policies and practices with respect to Plaintiff's and class members' pay; and

    g. Whether Defendants maintained a lawful timekeeping system.

47. The aforementioned common questions predominate over any questions affecting individual persons, and a class action is proper as it will achieve and promote consistency, economy, efficiency, fairness, and equity.

48. The claims of Plaintiffs are typical of those of each class in that class members have been employed in the same or similar positions and paid pursuant to the same compensation

structure as Plaintiffs acting as putative class representatives and were subject to the same or similar unlawful practices as Plaintiffs acting as putative class representatives.

49. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members would create a risk of inconsistent and varying results, risk the establishment of incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

50. Plaintiffs, acting as putative class representatives, are adequate representatives of the classes because their interests do not conflict with the interests of the members of the classes they seeks to represent. The interests of the members of the classes will be fairly and adequately protected by Plaintiffs acting as putative class representative and their undersigned counsel, who has experience in complex wage and hour, employment, and class action lawsuits.

51. Maintenance of this action as a class action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a class action can determine the rights of all class members in conformity with the interest of efficiency and judicial economy.

## GENERAL ALLEGATIONS

52. At all relevant times, Defendants utilize a computerized system which tracks the exact time an hourly employee clocks in and clocks out of work.

53. Even though Defendants maintain a system which records, to the minute, the time an employee clocks-in and clocks-out, Defendants would go into the system and change the clock-in and clock-out times to inaccurately reflect less time an employee worked.

54. Defendants system records the changes made to Plaintiffs and others similarly situated clock-in, clock-out, and lunch break times.

55. Defendants' policy and practice of changing the time work is performed resulted, over a period of time, in the failure to compensate Plaintiffs and others similarly situated properly for all the time they have actually worked. For example:

    a.  If Plaintiffs and others similarly situated worked late, Defendants would change the clock-out time to the exact time their shift was supposed to end. As such, Defendants' policy and practice resulted in Plaintiffs and others similarly situated receiving no direct hourly wage for a period of time of work during the workweek.

    b.  If Plaintiffs and others similarly situated were unable to take a lunch break, Defendants would change the clock-in and clock-out time to reflect that a lunch break was taken. As such, Defendants' policy and practice resulted in Plaintiffs and others similarly situated receiving no direct hourly wage for a period of time of work during the workweek.

    c.  If Plaintiffs and others similarly situated began working early, Defendants would change the clock-in time to the exact time their shift was supposed to begin. As such, Defendants' policy and practice resulted in Plaintiffs and others similarly situated receiving no direct hourly wage for a period of time of work during the workweek.

56. On or about January 22, 2019, Defendants' Staffing Secretary, Monica Daugherty (hereinafter "Secretary Daugherty"), asked Plaintiff Marquez how to sign into her new clock record system because she needed to go in and change Plaintiff Marquez's time.

57. When Plaintiff Marquez asked for clarification, Secretary Daugherty stated, "Well like when you get here early, I go in and change your time."

58. On or about January 24, 2019, Plaintiff Marquez reported to her Supervisor, Jenna Collier (hereinafter "Supervisor Collier") that Defendants were changing the hours she worked.

59. Subsequently, Plaintiff Marquez's Director, Suzanne Ford, communicated Plaintiff Marquez's complaint to Defendants' Human Resources.

60. Subsequently, Secretary Daugherty confronted and yelled at Plaintiff Marquez for reporting her to Defendants' Human Resources.

61. On or about March 4, 2019, Plaintiff Marquez met with Defendants' Human Resources, Evonne Brewington (hereinafter "HR Brewington") who admitted Defendants had changed Plaintiff Marquez's clock-in, clock-out, and lunch times for at least one hundred and forty one (141) hours in the last three (3) years.

62. Defendants have no good faith basis for their policy and practice of changing the work time of Plaintiffs and others similarly situated because their clock record system accurately records at least to the minute the actual clock-in and clock-out times.

63. Defendants have complete knowledge of all hours worked by Plaintiffs and others similarly situated, and yet their policies, practices, and/or procedures are designed to intentionally avoid paying their employees for all such hours worked.

64. Defendants' failure to pay their employees for all unpaid time has resulted in Plaintiffs and others similarly situated being regularly and willfully denied proposed compensation under the FLSA.

## COUNT I – FLSA CLAIM

65. Plaintiffs re-allege and incorporate by reference each and every allegation and averment set forth in this Complaint as though fully set forth herein.

66. At all times material herein, Plaintiffs and others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, et seq.

67. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a); 29 U.S.C. §207(a)(1).

68. Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

69. Defendants provided health care services at the facility of Menorah Medical Center where patients reside on the premises of the facility.

70. Defendants treated and accepted payment from patients that were non-Kansas residents, including, but not limited, to Missouri residents.

71. Defendants have an annual gross volume of business in excess of $500,000.

72. Defendants are enterprises acting "for a common business purpose" running a health care facility open to the general public. Specifically, Defendants' patients pay for services either out of pocket, with third party insurance, and/or through Medicaid and Medicare.

73. Further, Defendants' website states that Medicare, Medicaid and most insurance plans are accepted for their services.[1] This website is publicly available to anyone with internet access and solicits out of state clients for paid services.

74. Further, Defendants routinely bill entities outside the state of Kansas for services rendered. For example, the Centers for Medicare and Medicaid Services are located in Baltimore, Maryland; Blue Cross Blue Shield Association is headquartered in Chicago, Illinois; Aetna is headquartered in Hartford, Connecticut; and Humana is headquartered in Louisville, Kentucky.

75. Defendants have no published restriction stating Defendants will only service patients from the state of Kansas.

76. Plaintiffs and others similarly situated engaged in commerce.

77. Plaintiffs and others similarly situated provided services for patients who resided in Missouri.

78. At all relevant times to this action, Defendants were the "employer[s]" of Plaintiffs and others similarly situated within the meaning of the FLSA. 29 U.S.C. §203(d).

79. At all times relevant to this action, Plaintiffs and others similarly situated were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. §203(e).

---

[1] *See* https://menorahmedicalcenter.com/about/accepted-insurance-plans.dot

80. Plaintiffs and others similarly situated are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs and others similarly situated must be paid minimum wage in accordance with 29 U.S.C. §206.

81. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of forty (40) hours in a workweek. 29 U.S.C. §207(a).

82. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

83. Defendants violated the FLSA by failing to pay Plaintiffs and others similarly situated for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

84. Specifically, as discussed above, Defendants utilize an unlawful clock-in and clock-out policy and procedure that forces employees to work off-the-clock without being paid at the legal and applicable wage rates.

85. Plaintiffs and others similarly situated are victims of uniform and facility wide compensation policies. Upon information and belief, Defendants are applying the same unlawful compensation policies to others similarly situated who performed work on behalf of Defendants at Menorah Medical Center.

86. Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.

87. Plaintiffs and others similarly situated are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully

and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

88. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and others similarly situated are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum and overtime wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiffs and others similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

89. Defendants know or should know the proper rate of pay for Plaintiffs and others similarly situated as all persons are presumed to know and are bound to take notice of general public laws of the country or state where they reside as well as the legal effect of their acts. *See Hazlett v. Motor Vehicle Department*, 195 Kan. 439, 442, 407 P.2d 551 (1965). Such wrongful conduct demonstrates bad faith on the part of Defendants.

90. Plaintiffs, on behalf of themselves and others similarly who compose the putative class, seek damages in the amount of all respective unpaid minimum wage and overtime premium pay for work performed in excess of forty (40) hours in a work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. §216(b), and such other legal and equitable relief as the Court deems just and proper.

91. Plaintiffs, on behalf of themselves and others similarly situated who compose the putative class, seek recovery of all attorney fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. §216(b).

WHEREFORE, Plaintiffs, on behalf of themselves and all proposed class members, pray for relief as follows: (a) Designation of this action as a collective action on behalf of the proposed putative class members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all putative class members (the FLSA opt-in class), apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents To Join pursuant to U.S.C. §216(b); (b) Designation of Plaintiffs as Representative Plaintiffs, acting for and on behalf of the putative class members; (c) An award of damages for unpaid minimum wages and overtime wages due for Plaintiffs and the putative class; (d) An award of liquidated damages, to be paid by Defendants; (e) An award of pre-judgment and post-judgment interest, as provided by law; (f) An award of costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees; and (g) Any and all such other and further relief as this Court deems necessary, just and proper.

## **COUNT II – UNJUST ENRICHMENT**

92. Plaintiffs re-allege and incorporate by reference each and every allegation and averment set forth in this Complaint as though fully set forth herein.

93. Defendants have been and are being enriched by making deficient payments for work performed by Plaintiffs and others similarly situated. Defendants have been and is being enriched at the expense of Plaintiffs and others similarly situated because Plaintiffs and others similarly situated were not properly compensated for their work.

94. Defendants intentionally refused to pay Plaintiffs and others similarly situated at the proper rate for minimum and overtime hours worked. Defendants know or should know the proper rate of pay for Plaintiffs and others similarly situated as all persons are presumed to know and are bound to take notice of general public laws of the country or

state where they reside as well as the legal effect of their acts. *See Hazlett v. Motor Vehicle Department*, 195 Kan. 439, 442, 407 P.2d 551 (1965). Such wrongful conduct demonstrates bad faith on the part of Defendants.

95. Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time he work was being performed and accepted and retained that benefit without paying fair compensation for the same.

96. It is unjust for Defendants to retain the benefits from the unpaid work performed by Plaintiffs and others similarly situated.

WHEREFORE, Plaintiffs, on behalf of themselves and all proposed class members, pray for relief as follows: (a) Certify the state law claim set forth in Count II as a class action pursuant to Fed. R. Civ. P. 23; (b) Order Defendants to disgorge the value of their ill-gained benefits to Plaintiffs and the putative class; (c) An award of pre-judgment and post-judgment interest as provided by law; and (d) and for such other orders and further relief, including an award of costs and attorney's fees, as this Court deems just and equitable.

## COUNT III – QUANTUM MERUIT

97. Plaintiffs re-allege and incorporate by reference each and every allegation and averment set forth in this Complaint as though fully set forth herein.

98. At Defendants' request, Plaintiffs and others similarly situated provided services in the form of work for Defendants.

99. Services performed by Plaintiffs and others similarly situated, had the certain and reasonable value of their agreed upon hourly wage.

100. Plaintiffs and others similarly situated regularly worked beyond their shifts or during breaks, without being compensated for such time.

101. Plaintiffs and others similarly situated demanded to be paid for the reasonable value of the services they performed on Defendants' behalf by clocking-in on Defendant's time record system.

102. Defendants refused and failed to compensate Plaintiffs and others similarly situated the reasonable value of these services performed on Defendants' behalf after Plaintiffs' demand for compensation.

WHEREFORE, Plaintiffs, on behalf of themselves and all proposed class members, pray for relief as follows: (a) Certify the state law claim set forth in Count III as a class action pursuant to Fed. R. Civ. P. 23; (b) Order Defendants to disgorge the value of their ill-gained benefits to Plaintiffs and the putative class; (c) An award of pre-judgment and post-judgment interest as provided by law; and (d) and for such other orders and further relief, including an award of costs and attorney's fees, as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which Plaintiffs and all members of the proposed representative action have a right to jury trial.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby designate the United States District Court for the District of Kansas, in Kansas City, Kansas, as the place of trial.

(*Signature on the following page*)

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ Brittany C. Mehl
Ryan M. Paulus        D Kan 78276
r.paulus@cornerstonefirm.com
Brittany C. Mehl       D Kan 78534
b.mehl@cornerstonefirm.com
8350 N. St. Clair Ave., Ste. 225
Kansas City, Missouri 64151
Telephone              (816) 581-4040
Facsimile              (816) 741-8889
ATTORNEYS FOR PLAINTIFFS

20