## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**TAMMIE MARQUEZ, et al.,** *on behalf of themselves and all others similarly situated,*

        **Plaintiffs,**

**v.**

**MIDWEST DIVISION MMC, LLC, et al.,**

        **Defendants.**

**Case No. 19-2362-DDC-ADM**

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs have filed a "Renewed and Consolidated Unopposed Motion for Order Preliminarily Approving Class and Collective Action Settlement, Attorneys' Fees Award, Litigation Costs, Settlement Administrator, and Class Representative Service Awards and Directing Notice to the Class and Scheduling Final Fairness Hearing."  Doc. 101.  Plaintiffs filed this renewed motion in response to the court's Memorandum and Order granting in part and denying in part an earlier motion that plaintiffs had filed seeking approval of their hybrid Rule 23 and FLSA collective action settlement.  Doc. 100.  Specifically, the court's last Order granted the requests:  (1) to certify a Rule 23 class and FLSA collective action for settlement purposes, (2) to appoint plaintiffs Tammie Marquez, Neesha Perez, and Josiah Chumba as class representatives, and (3) to appoint Mary Katherine Paulus and Jessica M. McDowell of Cornerstone Law Firm as class counsel.  *Id.* at 42–43.  But the court denied without prejudice to refiling plaintiffs' motion to approve preliminarily the parties' proposed settlement, direct notice to the class, and schedule a Final Approval Hearing.  *Id.* at 2, 43.  The court explained that it could not approve the proposed settlement because the parties' Settlement Agreement included an agreement by

defendants not to contest the amount of the service awards in exchange for the named plaintiffs' agreement to an overly broad and general release of all claims against defendants. *See id.* at 2–3, 29–34. Plaintiffs' renewed motion explains that the parties have removed this provision from their Amended Settlement Agreement. Doc. 102 at 2 (citing Doc. 102-1 at 23–24 (Amended Settlement Agreement ¶¶ 49, 51)). With this amendment to the parties' Amended Settlement Agreement, the court preliminarily approves the parties' proposed settlement. Also, the court directs the parties to provide notice to the class and collective members consistent with this Order. And the court schedules a fairness hearing for **February 9, 2023**. The court explains how it reaches these decisions, below.

## I.    Factual Background

The court more thoroughly described this case's factual and procedural background in its last Memorandum and Order. Doc. 100 at 3–7. But, for context, the court provides a brief summary of the parties and claims at issue in the case.

Plaintiffs Tammie Marquez, Neesha Perez, and Josiah Chumba are registered nurses (RNs) who worked for entities affiliated with HCA Healthcare. Plaintiffs bring class and collective action claims against defendants for unpaid compensation and related penalties and damages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, and the Kansas Wage Payment Act (KWPA), Kan. Stat. Ann. §§ 44-313–44-327. Doc. 27 at 13–17, 19–22 (Second Am. Compl. ¶¶ 68–94, 106–124). Also, invoking Kansas common law, plaintiffs assert class claims for unjust enrichment and quantum meruit claims under Fed. R. Civ. P. 23. *Id.* at 17–19 (Second Am. Compl. ¶¶ 95–105).

After many months of prosecuting this lawsuit, the parties reached an agreement to settle plaintiffs' claims. Plaintiffs now ask the court to issue an Order: (1) preliminarily approving the

parties' proposed class and collective action settlement, (2) approving the form and manner of notice, (3) scheduling a hearing date for final settlement approval, and (4) approving an attorneys' fee award, litigation costs, settlement administrator fees, and class representative service awards.  The court addresses these requests, below.

## II.     Legal Standard

"Court approval is required to settle both Rule 23 class actions and FLSA claims." *Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-ADM, 2021 WL 5038773, at *2 (D. Kan. Oct. 29, 2021) (first citing *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127–28 (D. Colo. 2016); then citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); and then citing Fed. R. Civ. P. 23(e)).  When "the court has not yet certified an FLSA collective action or a Rule 23 class action, the court must first consider certification before addressing the proposed settlement." *Id.* (citing *Flerlage v. US Foods, Inc.*, No. 18-2614-DDC-TJJ, 2020 WL 4673155, at *2–4, *8 (D. Kan. Aug. 12, 2020)).  The court's last Order considered the certification question and granted plaintiffs' request to certify, conditionally, a settlement-only class under 29 U.S.C. § 216(b) of the FLSA and a Rule 23 settlement-only class for their KWPA claims.  Doc. 100 at 8–16.  Thus, the court considers, below, whether it should approve preliminarily the settlement agreement as a fair, reasonable, and adequate settlement.

## III.    Analysis

As already explained, plaintiffs' renewed motion asks the court to enter an Order that does four things:  (1) preliminarily approves the parties' proposed class and collective action settlement, (2) approves the form and manner of notice, (3) schedules a hearing date for final settlement approval, and (4) approves an attorneys' fee award, litigation costs, settlement

administrator fees, and class representative service awards.  The court addresses each request, in turn, below.

### A.  Preliminary Approval of the Proposed Settlement

*First*, plaintiffs ask the court to approve preliminarily the settlement of their FLSA collective action claims and their KWPA Rule 23 class action claims.  The court's last Order provided a thorough summary of the Settlement Agreement's key terms.  *See* Doc. 100 at 16–21.  The parties' Amended Settlement Agreement includes the same key terms.

The Amended Settlement Agreement includes an agreement by defendants to pay a maximum, total Global Settlement Fund of $1,800,000, to resolve this matter fully.  Doc. 102-1 at 4, 8 (Amended Settlement Agreement ¶¶ 6, 18).  The Global Settlement Fund includes:  (1) all settlement awards to participating class members; (2) any service awards to the named plaintiffs that the court approves; (3) payment to plaintiffs' counsel for any amounts of attorneys' fees, expenses, and costs that the court approves; and (4) payment for settlement administration costs.  *Id.* at 4 (Amended Settlement Agreement ¶ 6).  After deducting amounts for any approved service awards, attorneys' fees, and Settlement Administrator's fees and expenses from the Global Settlement Fund, the remaining funds will comprise the Net Settlement Fund.  *Id.* at 4–5 (Amended Settlement Agreement ¶ 7).  The Net Settlement Fund will represent the amount available to distribute as awards to the settlement class members based on their KWPA class and FLSA collective action claims.  *Id.*

Plaintiffs seek—and defendants don't oppose—an attorneys' fee award amounting to 30% of the Global Settlement Fund.  Doc. 102 at 9, 12; *see also* Doc. 102-1 at 8, 23 (Amended Settlement Agreement ¶¶ 18, 48).  This proportion equals $540,000.  *Id.*  Also, plaintiffs ask the court to approve $2,100 litigation costs.  Doc. 102 at 15; *see also* Doc. 102-1 at 8 (Amended

Settlement Agreement ¶ 18).  Plaintiffs ask the court to approve a total of $36,000 in service awards to the named plaintiffs ($18,000 to plaintiff Chumba, $12,000 to plaintiff Marquez, and $6,000 to plaintiff Perez).  Doc. 102 at 15–18; *see also* Doc. 102-1 at 23 (Amended Settlement Agreement ¶ 49).  And plaintiffs ask the court to approve setting aside $30,000 in Settlement Administrator costs.  Doc. 102 at 19–20; Doc. 102-1 at 8 (Amended Settlement Agreement ¶ 18).

Also, the parties have agreed to a proposed Plan of Allocation that will pay each class member a pro rata settlement share of designated FLSA Allocated Funds and designated KWPA Allocated Funds for their class cohort (which is determined based on the entity who employed the class member).  The court's last Order thoroughly explained the parties' Proposed Plan of Allocation.  Doc. 100 at 17–21.  The court doesn't repeat that summary here.

The court now evaluates whether preliminarily approving the proposed settlement comports with the FLSA and Rule 23.

### 1.   Preliminary Approval of FLSA Settlement

To approve an FLSA settlement, the court must determine whether:  "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned[,] and (3) the proposed settlement contains an award of reasonable attorneys' fees." *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *5 (D. Kan. Aug. 18, 2015) (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).  The court addresses each consideration, below.

### a.   Bona Fide Dispute

*First*, the court previously concluded that this case's claims present a bona fide dispute whether defendants violated the FLSA.  Doc. 100 at 23.  Thus, the first requirement for FLSA settlement approval is satisfied here.

### b.  Fairness and Equity

*Second*, the court addresses whether the proposed settlement is fair and equitable.  To qualify as "fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."  *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014).  To determine if the proposed settlement is fair and equitable, courts regularly examine the same factors that apply to proposed class action settlements under Rule 23(e).  *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014); *Tommey v. Comput. Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at *2 (D. Kan. Apr. 13, 2015).  Those factors include:

> (1) whether the proposed settlement has been fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation[,] and (4) the judgment of the parties that the settlement is fair and reasonable.

*Barbosa*, 2014 WL 5099423, at *7.  The court previously concluded that all four of these factors favor approving the parties' proposed settlement as fair and equitable.  Doc. 100 at 24–25.

The court also recognized that these four factors may demonstrate that a settlement agreement is fair and reasonable, but they are not determinative.  *See McCaffrey*, 2011 WL 32436, at *5 (explaining that the Rule 23(e) factors "provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative").  In addition to the four factors listed above, the court also must determine "that the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA."  *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *5 (D. Kan. Oct. 29, 2012).

The court previously explained that it had "reviewed the parties' proposed settlement with those considerations in mind" and "for the most part, the court [found] that the proposed settlements' terms are fair and equitable." Doc. 100 at 25–26. But the court declined to approve a portion of the parties' proposed Settlement Agreement. This part of the Agreement recited defendants' agreement not to oppose the named plaintiffs' requested service awards in exchange for named plaintiffs' release of defendants from all claims "regarding any and all subject matters whatsoever[.]" *Id.* at 26 (citing Doc. 96-1 at 24–25 (Settlement Agreement ¶¶ 49, 51)). The court explained that the release was overly broad, and it refused to approve the Settlement Agreement because it contained the provision. *Id.* at 29–34.

The parties since have amended that portion of their Settlement Agreement. Their Amended Settlement Agreement includes an agreement that plaintiffs will ask the court to approve service awards for the named plaintiffs in an amount not exceeding $36,000. Doc. 102-1 at 23 (Amended Settlement Agreement ¶ 49). And defendants have agreed not to oppose plaintiffs' application to the court for a service fee award. *Id.* But the Amended Settlement Agreement omits the provision making defendants' agreement not to oppose the requested service awards contingent on plaintiffs' release of all claims. *See id.*

Also, the parties have amended their Settlement Agreement to remove the overly broad release of claims by the named plaintiffs. The Amended Settlement Agreement limits plaintiffs' release to claims arising from wage and hour violations. *See id.* at 6–7, 24 (Amended Settlement Agreement ¶¶ 16, 51). The Amended Settlement Agreement's release now aligns with the case law prohibiting an FLSA plaintiff from agreeing to a general release of all claims and, instead, permitting only a release of wage-related claims against an employer. *See Florece*, 2021 WL 5038773, at *10 (recognizing that a release "focused on wage-related claims . . . is permissible"

(citing *Brittle v. Metamorphosis, LLC*, No. 20 CIV. 3880 (ER), 2021 WL 606244, at *4 (S.D.N.Y. Jan. 22, 2021)); *see also Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2013 WL 1659591, at *3 (D. Kan. Apr. 17, 2013) (approving amended settlement agreement that included "a release of only wage-related claims, which alleviate[d] the [c]ourt's previous concerns regarding a general release"). Thus, the court finds plaintiffs' releases here fair and equitable.

The court also finds that the amounts of the requested service awards are fair and reasonable. As already recited, plaintiffs seek an $18,000 service award for plaintiff Chumba, a $12,000 service award for plaintiff Marquez, and a $6,000 service award for plaintiff Perez. Doc. 102 at 15–18. The court's last Order considered these requested amounts in light of the reported hours that each named plaintiff devoted to working on this case. Doc. 100 at 34–36. The court recognized that the requested amounts produce hourly rates for the work performed that are on the higher end of hourly rates approved by our court. *Id.* at 35. But also, the hourly rates don't depart significantly from previously-approved rates. *Id.*

And, the court recognized, several other factors "favor the proposed service awards, including 'the named [p]laintiffs' typical hourly rates of approximately $45.00 or more in their regular employment (pay which they had to forego when missing work due to their participation in this lawsuit), the reputational risk they undertook by serving as named plaintiffs in a case against a current or former employer . . . , and the amount of time they have devoted to this lawsuit—particularly under the uniquely challenging circumstances of the COVID-19 pandemic.'" *Id.* at 36 (quoting Doc. 99 at 14). The only issue the court had with the requested service awards was that the proposed Settlement Agreement conditioned those service awards on plaintiffs' overly broad release of all claims. *Id.* But, as discussed, the parties have cured that

problem with the Amended Settlement Agreement removing the language the court previously refused to approve.

Because the court already has found "for the most part . . . that the proposed settlements' terms are fair and equitable[,]" Doc. 100 at 25–26, and the parties have fixed the problems that the court identified with their first proposed settlement agreement, the court finds that their Amended Settlement Agreement is a fair and equitable settlement under the Rule 23(e) factors, as well as other considerations "in light of the history and policy of the FLSA."  *Gambrell*, 2012 WL 5306273, at *5.  The court thus finds that the parties' settlement here is a fair and equitable settlement under the FLSA.

### c. Attorneys' Fees and Costs

*Last*, the FLSA requires a settlement of FLSA claims to include an award of reasonable attorneys' fees and the costs of the action.  29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2 (citing *Lee v. The Timberland Co.*, No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)).  The court has discretion to determine the amount and reasonableness of the FLSA fee, but the fee award nevertheless is mandatory.  *Barbosa*, 2015 WL 4920292, at *4 (citations omitted).

Here, the parties' Amended Settlement Agreement limits plaintiffs' counsel to seeking an award of $540,000 in attorneys' fees, or 30% of the Global Settlement Fund, and $2,100 in expenses and costs.  Doc. 102-1 at 8 (Amended Settlement Agreement ¶ 18).  Also, the Settlement Agreement limits the amount of Settlement Administration Costs (defined as all fees and costs incurred by the Settlement Administrator, including sending Notice) to $30,000.  *Id.* Defendants have agreed not to oppose plaintiffs' application for attorneys' fees.  *Id.* at 23 (Amended Settlement Agreement ¶ 48).  As our court has recognized, when "defendant agrees

[not to] oppose an award of attorneys' fees from a common fund, defendant has no incentive to bargain for lower fees." *Barbosa*, 2014 WL 5099423, at *9. So, in those circumstances, our court "skeptically examine[s] and analyze[s] the fee and cost proposal." *Id.*

The Tenth Circuit applies a hybrid approach when deciding whether a requested fee award is reasonable, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar. *Barbosa*, 2015 WL 4920292, at *7. When applying the percentage fee method, the court must find that the award is "reasonable and . . . must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *Id.* (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)). The hybrid approach also requires the court to consider the lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis*, 2014 WL 4357486, at *4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Env't Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012). Also, the court considers the 12 factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Hobbs*, 2012 WL 4747166, at *3. Those factors are:

> (1) time and labor required, (2) novelty and difficulty of the questions presented by the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation, and ability of the attorneys, (10) "undesirability" of the case, (11) nature and length of the professional relationship with the client and (12) awards in similar cases.

*Id.* at *4 (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); then citing *Johnson*, 488 F.2d at 717–19). The court analyzes these 12 factors below.

10

### i.    Factor 1:  Time and Labor Required

Plaintiffs' counsel represents that they have devoted 639.2 hours to this matter during its more than three-year life span.  Doc. 102-2 at 3 (Third Paulus Decl. ¶ 8).  Their work included serving and responding to written discovery; meeting and conferring with defense counsel about discovery; preparing for and defending depositions; forming a strategy with co-counsel for preparing motions for conditional and class certification; preparing for and participating in mediation; analyzing time records to formulate a damage calculation model; reviewing and revising the settlement agreement, notice, and claims forms; researching and analyzing the disputed settlement terms; preparing for and attending a second mediation, negotiating the remaining disputed settlement terms; corresponding with the named plaintiffs; drafting and filing the motion seeking approval of the settlement; communicating with defense counsel about revising the Settlement Agreement's terms; revising the Settlement Agreement; and drafting the renewed motion seeking approval of the settlement.  Doc. 99-1 at 2–6 (Second Paulus Decl. ¶¶ 8–11); Doc. 102-2 at 2–3 (Third Paulus Decl. ¶ 6).  The court finds the amount of time that counsel devoted to the lawsuit is reasonable in light of the work they have completed.

Two partners with an hourly rate of $600 and one associate with an hourly rate of $350 from the Cornerstone Law Firm billed all the hours devoted to the lawsuit.  These lawyers have extensive experience litigating class and collective action wage and hour lawsuits.  Doc. 94-2 at 27–30 (First Paulus Decl. ¶¶ 99–103).  Although these hourly rates are on the higher end of rates typically approved by our court, they are comparable to hourly rates that the court has approved in FLSA cases involving counsel with similar experience.  *See Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-ADM, 2021 WL 5042715, at *7 (D. Kan. Oct. 29, 2021) (approving $575 and $475 hourly rates in FLSA case); *see also Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-

KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (approving hourly rates of $600, $450, and

$400 in an FLSA settlement even "though on the high end of the approvable range"); *Bruner v.

Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL

2058762, at *10 (D. Kan. July 14, 2009) (awarding plaintiffs' counsel a "generous" fee award in

an FLSA settlement using an hourly rate of $590.91).

Applying the attorneys' standard hourly rates to the 639.2 hours they worked on this

matter, plaintiffs' counsel calculates a lodestar of $358,395.[1]  Doc. 102-2 at 3 (Third Paulus

Decl. ¶ 8).  The lodestar is almost $200,000 less than the $540,000 attorneys' fee award that

counsel seeks in this case.  As plaintiffs' counsel correctly calculates, the requested award

represents a 1.5 multiplier of counsel's customary lodestar fee.  Doc. 102 at 9.  Nevertheless, our

court and others have approved requested fee awards when the multiplier for the lodestar amount

is 1.5 or greater.  *See Florece*, 2021 WL 5042715, at *7 (approving fees with a 2.65 multiplier on

the lodestar amount); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D.

Kan. 2018) (noting that multipliers of 2 and 3 "are well within the range accepted by other

courts, even in cases without trials"); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-

KEW, 2018 WL 2296588, at *10 (E.D. Okla. Mar. 27, 2018) (finding that a "multiplier of

2.58408" was "well within the range of multipliers approved in the Tenth Circuit, and other

circuits, when a lodestar cross-check is used"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-

KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting Colorado federal cases

approving lodestar multipliers ranging from 2.5 to 4.6).

---

[1]	The Declaration recites that the lodestar calculation is "$358,390.00."  Doc. 102-2 at 3 (Third
Paulus Decl. ¶ 8).  But the chart showing the lodestar amount for each attorney correctly lists the amounts
as $216,000, $107,220, and $35,175.  *Id.*  Adding these three amounts together produces a lodestar
calculation of $358,395.

Also, the court recognizes that counsel will incur additional time to complete the settlement and conclude the litigation. They will need to draft a motion seeking the court's final approval of the settlement, prepare for and attend the final fairness hearing, and work with the Settlement Administrator to process the class and collective action members' claims, answer their questions, and distribute their settlement awards. Counsel has not yet recorded time for these tasks. Thus, the lodestar does not reflect this anticipated work. The lodestar will continue to increase as counsel performs this additional work, and it will exceed the requested award by an even greater amount.

For all these reasons, the court concludes that the requested $540,000 attorneys' fees award is consistent with the time and labor required in this matter. This first factor thus favors approving the award.

### ii. Factors 2 and 3: Novelty and Difficulty of the Questions Presented and Skill Required to Perform the Legal Service Properly

Plaintiffs' counsel asserts that this wage and hour case presented difficult issues of fact and law. The court agrees. As described in the court's last Order, plaintiffs allege that defendants edited their time records in a computerized system to reflect—inaccurately—that they had worked less time than they actually had worked. Doc. 100 at 4–5. And, because of these changes to their time records, plaintiffs assert defendants failed to compensate them for all of the time that they actually had worked. *Id.* Defendants strongly disputed plaintiffs' allegations. *Id.* at 6. Also, they asserted a preemption defense against the claims under the Labor Management Relations Act. *Id.*

To calculate the class and collective members' alleged damages, plaintiffs' counsel reviewed an extensive amount of information—consisting of defendants' time records and other

aggregated data.  *Id.* at 18.  Using that data, counsel formulated a damages calculation model for settlement class members.  *Id.*  It estimates the frequency of time adjustments that—in plaintiffs' counsel's opinion—class members would have experienced.  *Id.*  Then, counsel used that model to estimate the alleged damages for all class and collective action settlement members.  *Id.*  The parties then used that model to develop their Plan of Allocation—*i.e.*, their plan for distributing the settlement funds to class and collective action members.  *Id.* at 17–21.  The parties' Amended Settlement Agreement incorporates that Plan of Allocation.  Doc. 102-1 at 5, 15–16 (Amended Settlement Agreement ¶¶ 14, 33–34).  And the court's last Order approved that Plan of Allocation, finding that it "provides adequate compensation to collective action members that is fair and equitable."  Doc. 100 at 27.

These facts demonstrate that the case involved complex and difficult factual and legal issues.  Also, they show that plaintiffs' counsel had the requisite skills to litigate this wage and hour case—skills that required detailed review of employee time records and forming a comprehensive damages calculation model.  Plaintiffs' counsel has extensive experience in this area of law.  And this skill and experience most likely contributed to their success in resolving the litigation through a settlement that benefits class and collective members.  The court thus finds that these two factors favor approving the requested fee award.

### iii.   Factor 4:  Preclusion of Other Employment

Plaintiffs' counsel represents that the time devoted to this lawsuit—more than 600 hours—has precluded them from accepting other engagements.  Doc. 99-1 at 6–7 (Second Paulus Decl. ¶¶ 16, 18).  Plaintiffs' counsel represents that they only can litigate "a handful" of wage and hour class and collective action cases "at any given time" due to "the size and complexity of" these kind of cases and "the time and resources required to litigate" them.  *Id.* at 7 (Second

Paulus Decl. ¶ 18). The court agrees that the time and effort spent litigating the case—along with the size and complexity of the litigation—demonstrates that the lawsuit precluded plaintiffs' counsel from working on other matters. This factor thus favors approving the fee award.

### iv.     Factor 5:  Customary Fee

Our court has recognized that while "the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund." *Barbosa*, 2015 WL 4920292, at *11 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). Our court "typically applie[s] the percentage of the fund method when awarding fees in common fund, FLSA collective actions." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7). "Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7).

Here, plaintiffs' counsel requests a fee award amounting to 30% of the Settlement Fund. This percentage is less than the 40% contingency fee agreement between plaintiffs' counsel and the representative plaintiffs. *See* Doc. 99-1 at 6 (Second Paulus Decl. ¶ 14) (reciting that plaintiffs "Marquez, Chumba, and Perez each entered into a fee agreement with [plaintiffs' counsel's] firm to seek up to a maximum contingency of 40% of any total potential recovery in this lawsuit"). Also, the requested fee award here is less than the customary fee range which plaintiffs' counsel claims to charge in similar matters. *See id.* (Second Paulus Decl. ¶ 13) (asserting that plaintiffs' counsel's firm "typically and customarily enters into 40% contingency fee agreements with named and representative plaintiffs in putative class and/or collective actions"). And plaintiffs' fee request here—seeking fees in an amount that is 30% of

the Global Settlement Fund—falls within the range of percentage fee awards that our court typically approves.  *See, e.g.*, *Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) (explaining that "attorneys' fees of one-third or thereabouts are generally deemed reasonable" (citation and internal quotation marks omitted)); *Barbosa*, 2015 WL 4920292, at *11 (finding that attorney fee request that was "33 per cent of the total settlement amount" was "within the customary percentage of the fund approved by this Court").  Thus, this factor also favors approving the requested fee award.

### v.    Factor 6:  Whether the Fee Is Fixed or Contingent

Plaintiffs' counsel took this case on a contingency basis "with the understanding and expectation that it would require the expenditure of significant amounts of time and resources, a under the risk that [plaintiffs' counsel] may ultimately recover nothing."  Doc. 99-1 at 6 (Second Paulus Decl. ¶ 15).  Our court has recognized the "risk undertaken" when counsel agrees to pursue "claims on a contingent-fee basis."  *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018).  But our court also has recognized that it's the job of the courts, not the parties, to determine the fees in FLSA actions.  *See Bruner*, 2009 WL 2058762, at *8.  A contingency fee agreement is only one of many relevant factors, and it provides no conclusive evidence of the fee award's reasonableness.  *Id.*  This factor thus is neutral.

### vi.    Factor 7:  Time Limitations

Plaintiffs' counsel asserts that they faced time limitations in this lawsuit stemming from the COVID-19 pandemic.  Doc. 99-1 at 7 (Second Paulus Decl. ¶ 19).  Plaintiffs' counsel contends that the pandemic has "more of an impact on this case than it did on many other employment litigation matters" because "all of the parties to this case are in the healthcare industry, and thus," the parties on both sides of the caption felt "burdened by additional time

constraints and stresses unique to that industry—all of which resulted in delays and other logistical concerns impacting this litigation." *Id.* The court recognizes the time constraints imposed on counsel were real. But the court finds that those time limitations are inherent in any engagement and not specific to an FLSA action like this one (even if litigated during a pandemic). The court finds this factor a neutral one.

### vii.    Factor 8:  Amount Involved and Results Obtained

Plaintiffs' counsel secured a favorable result. As the court discussed in its last Order, "the proposed Plan of Allocation produces settlement awards ranging from about 80–90% of class members' total, estimated alleged damages—including liquidated damages—as calculated by counsel." Doc. 100 at 27 (citing Doc. 94-2 at 25 (Paulus Decl. ¶ 91)). The "'pro rata settlement shares in the Plan of Allocation are premised on [p]laintiffs' counsel's admittedly aggressive damage calculations—in which [counsel] assume[d] that every edit to class members' time records is improper, and thus, an alleged violation of the FLSA or KWPA[.]'" *Id.* (quoting Doc. 94-2 at 25–26 (Paulus Decl. ¶ 92)). Thus, according to plaintiffs' counsel, "'the settlement awards likely exceed any true "best day in court" recovery that class members could potentially achieve were they to prevail on these claims.'" *Id.* (quoting Doc. 94-2 at 25–26 (Paulus Decl. ¶ 92)).

Meanwhile, defendants continue to contest their liability. The ultimate outcome of this litigation (if it not settled) thus remains in doubt. The settlement avoids the uncertainty and rigors of class and collective action certification, summary judgment practice, and trial and produces a favorable result for the opt-in plaintiffs. This factor favors approving the fee award.

### viii.   Factor 9:  Attorneys' Experience, Reputation, and Ability

The court already has discussed the experience, reputation, and ability of the attorneys above.  As noted, plaintiffs' counsel has extensive experience litigating class and collective action wage and hour lawsuits.  The skill and experience of counsel is reflected in the hourly rates that the court approved above.  Thus, the court already has accounted for this factor.  And so, the court finds, this factor is a neutral one.

### ix.   Factor 10:  Undesirability of the Case

Plaintiffs' counsel concedes that they didn't find this case undesirable.  Doc. 102 at 13. But, they argue that other attorneys might have found the case undesirable because it involved a contingency arrangement that "risked investing their time and money and recovering nothing." *Florece*, 2021 WL 5042715, at *8 (finding this *Johnson* factor favored "approving the requested fee" because "many other attorneys might" have found the case undesirable "because of the risks involved").  The court already has considered the contingency nature of the representation above. And the court declines to find the case undesirable simply because it involved a contingency fee agreement and the risk that comes with such an arrangement.  Thus, this tenth *Johnson* factor is neutral to the analysis.

### x.   Factor 11:  Nature and Length of the Professional
### Relationship

Our court has explained "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial."  *Barbosa*, 2015 WL 4920292, at *12 (citing *Bruner*, 2009 WL 2058762, at *9 (further citation omitted)).  Plaintiffs' counsel agrees.  This factor either is neutral or irrelevant to the court's decision whether it should approve the requested fees as reasonable.  Doc. 102 at 14.  The court agrees.

###### xi.     Factor 12:  Awards in Similar Cases

As already discussed, the requested fee award comports with awards approved in similar cases.  The court finds that this last *Johnson* factor favors approving the settlement as reasonable.

###### xii.     Sum total of *Johnson* Factors

Seven of *Johnson*'s 12 factors favor approving the proposed fee award.  Five factors are neutral.  And none disfavor approval.  Based on this analysis of the lodestar and *Johnson* factors, the court concludes the attorneys' fees requested are fair and reasonable.  The court thus grants plaintiffs' request and approves the $540,000 requested attorneys' fees award.

Also, the court grants plaintiffs' counsel request for an award of $2,075.33 in costs.  Doc. 99-1 at 9–10 (Second Paulus Decl. ¶ 25).  Plaintiffs' counsel explains that they incurred these costs for court filing fees, service of process, and deposition transcripts.  *Id.*  The court finds these costs incurred reasonable.

And the court finds reasonable plaintiffs' counsel request that the court approve— preliminarily—up to $30,000 for Settlement Administrator fees.  *Id.* at 11 (Second Paulus Decl. ¶ 28).  Plaintiffs' counsel explains that the Settlement Administrator has provided a total settlement administration and claims processing costs estimate of $19,280–$24,000.  *Id.* at 10 (Second Paulus Decl. ¶ 27).  The estimated amount is comparable to other settlement administration fees that our court has approved as reasonable in FLSA cases.  *See Florece*, 2021 WL 5042715, at *2, *9 (approving as reasonable claims administrator's anticipated costs and expenses of $21,500, that was payable from the gross settlement fund); *see also James v. Boyd Gaming Corp.*, No. 19-2260-DDC-ADM, 2022 WL 4482477, at *12 (D. Kan. Sept. 27, 2022) (approving as reasonable $16,436 for settlement administration fees).  But plaintiffs' counsel asks the court to approve more than that amount—up to $30,000 for settlement administration

fees—because "the parties' final Settlement Agreement ultimately included some additional potential settlement administration tasks, such as providing regular reporting to the parties' counsel during and immediately after the close of the 75-day Claims Period and calculating the *pro rata* redistribution increases of unclaimed settlement funds to participating class members up to their individual 'capped' amounts of alleged overtime and straight time damages[.]"  Doc. 99-1 at 11 (Second Paulus Decl. ¶ 28).  And, plaintiffs' counsel asserts, these additional settlement administration tasks "might result in additional costs or fees from [the Settlement Administrator] in excess of their original estimated total costs[.]"  *Id.*  Based on plaintiffs' counsel explanation and the potential additional work involved here for the Settlement Administrator, the court approves preliminarily approve up to $30,000.00 for Settlement Administrator fees.

### d.  Conclusion:  FLSA Preliminary Approval

For reasons explained, the court finds that (1) this litigation involves a bona fide dispute, (2) the proposed Amended Settlement Agreement is fair and equitable to all parties, and (3) the proposed Amended Settlement Agreement contains an award of reasonable attorneys' fees, expenses, and costs.  The court thus grants preliminary approval of the Amended Settlement Agreement under the FLSA.

### 2.  23(e) Settlement Approval

Next, the court addresses plaintiffs' request to approve the KWPA settlement under Rule 23.  Rule 23(e) requires court approval of the parties' settlement of a certified class action.  The court may approve a settlement only after finding that it is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  When making this determination, Rule 23(e)(2) instructs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the
>      class;

     (B) the proposal was negotiated at arm's length;
     (C) the relief provided for the class is adequate, taking into account:
          (i)    the costs, risks, and delay of trial and appeal;
          (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
          (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
          (iv)  any agreement required to be identified under Rule 23(e)(3); and
     (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).  Also, the Tenth Circuit has instructed courts to consider the following four factors when assessing whether a proposed settlement is "fair, reasonable, and adequate":

     (1) whether the proposed settlement was fairly and honestly negotiated;
     (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
     (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
     (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

     The class settlement approval process typically occurs in two phases.  First, the court considers whether preliminary approval of the settlement is appropriate.  William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2020); *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *4–5 (D. Kan. Dec. 6, 2012).  "If the [c]ourt grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also Newberg on Class Actions* § 13:10 ("[T]he court's primary objective [at the preliminary approval stage] is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing.").  Second, "taking account of all of the information learned during [the preliminary approval] process, the court decides whether or not to give 'final approval' to the settlement." *Newberg on Class Actions* § 13:10.

The court's last Order explained that it couldn't "discern whether the settlement 'treats class members equitably relative to each other[,]' because it contain[ed] the named plaintiffs' broad release which serves as consideration for defendants' agreement not to contest their requested service awards."  Doc. 100 at 39 (quoting Fed. R. Civ. P. 23(e)(2)(D)).  As discussed, the parties have eliminated those provisions from their Amended Settlement Agreement.  And, for reasons explained below, the court finds that the proposed settlement satisfies the other Rule 23(e) factors as well.

*First*, the class representatives and class counsel have represented the class adequately, as Rule 23(e)(2)(A) requires.  As our court has observed, other courts "have analyzed the adequacy of representation" under Rule 23(e)(2)(A) "by evaluating adequacy under Rule 23(a)(4)." *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).  The court's last Order found that the Rule 23(a)(4) adequacy requirement was met because plaintiffs—represented by qualified counsel—had prosecuted the lawsuit vigorously to date and there was nothing to suggest a conflict that would make plaintiffs or their counsel inadequate.  Doc. 100 at 12.  The same is true today.  The court finds this first factor satisfied.

*Second*, the parties negotiated their settlement fairly and honestly at arms' length.  As the court's last Order explained, the parties mediated this case after many months of contentious litigation.  Doc. 100 at 24.  They negotiated the settlement through experienced counsel and with the services of a neutral, third-party mediator.  *Id.*  Thus, the requirements of Rule 23(e)(2)(B) are met here.

*Third*, the proposed settlement agreement provides adequate relief for the class as Rule 23(e)(2)(C) requires.  As the court already has explained, the litigation involves serious questions

of law and fact that place the ultimate outcome of the litigation in doubt.  Doc. 100 at 25.  The proposed settlement provides immediate recovery to the class and collective action members— recovery that might never come if plaintiffs couldn't prevail on their claims against defendants. The parties' proposed Plan of Allocation provides effective and adequate recovery by producing settlement awards ranging from about 80–90% of class members' total, estimated alleged damages—including liquidated damages—as calculated by counsel.  Doc. 100 at 27 (citing Doc. 94-2 at 25 (Paulus Decl. ¶ 91)).  And, as discussed, the parties' proposed settlement contains an attorneys' fee award that is fair and reasonable.  All of these facts demonstrate that the proposed settlement agreement provides adequate relief for the class.

*Last*, the proposed settlement agreement treats class members equitably relative to one another, as Rule 23(e)(2)(D) requires.  The court's last Order thoroughly reviewed the proposed Plan of Allocation.  Doc. 100 at 26–27.  After explaining how it distributes the settlement awards to class and collective action members, the court found it "provides adequate compensation to collective action members that is fair and reasonable."  *Id.* at 27.  Thus, Rule 23(e)(2)(D)'s last factor is satisfied here.

The proposed settlement also satisfies each of the *Rutter* factors for reasons already discussed in the court's last Order and the preceding paragraphs.  That is, (1) the proposed settlement was fairly and honestly negotiated; (2) serious questions of law and fact still exist, and these questions place the ultimate outcome of the litigation in doubt; (3) the value of the proposed settlement's immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties are of the judgment that the settlement is fair and reasonable.  *Rutter*, 314 F.3d at 1188.

Thus, the court finds that the parties' proposed settlement of the KWPA claims is "fair, reasonable, and adequate," as Fed. R. Civ. P. 23(e)(2) requires.  The court thus approves the parties' proposed settlement preliminarily under Rule 23(e).

## B.  Notice

Last, plaintiffs ask the court to approve the form and manner of providing notice to the class and collective action members.  Rule 23 requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Also, FLSA collective action members must "receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

In its last Order, the court found it premature to approve the proposed Notice and Claim Form because the court had declined to approve preliminarily the parties' Settlement Agreement. Doc. 100 at 42.  But nevertheless, the court reviewed the parties' proposed Notice and Claim Form to discern whether it presented any "areas of concern" that the parties could correct "in advance of filing a renewed motion for preliminary settlement approval."  *Florece*, 2021 WL 5038773, at *14.  The court found none.  Just the opposite, it found that "the proposed Notice and Claim Form 'is fair and accurate[.]'"  Doc. 100 at 42 (quoting *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 2137282, at *4 (D. Kan. May 16, 2019)). Also, the court concluded that the proposed Notice and Claim Form contains the information required by Rules 23(c)(2)(B) and (e).  *Id.*  The court advised the parties that it was "prepared to approve the Notice and Claim Form if the parties submit an amended Settlement Agreement that secures the court's preliminary approval of the settlement."  *Id.*  Because the parties now have

secured the court's approval of their proposed Amended Settlement Agreement and because the court already has found that the proposed Notice and Claim Form is fair and accurate, the court approves the form and manner of notice. And it directs the parties to provide the Notice and Claim Form to class and collective action members in the manner they have proposed.

## IV.    Conclusion

For reasons explained, the court grants plaintiffs' "Renewed and Consolidated Unopposed Motion for Order Preliminarily Approving Class and Collective Action Settlement, Attorneys' Fees Award, Litigation Costs, Settlement Administrator, and Class Representative Service Awards and Directing Notice to the Class and Scheduling Final Fairness Hearing" (Doc. 101).

The court's last Order—issued on September 20, 2022—granted requests:

- to certify a Rule 23 class action for settlement purposes;

- to certify conditionally an FLSA collective action for settlement purposes;

- to appoint plaintiffs Tammie Marquez, Neesha Perez, and Josiah Chumba as class representatives; and

- to appoint Mary Katherine Paulus and Jessica M. McDowell of Cornerstone Law Firm as class counsel.

Doc. 100 at 43. And the court certified a Rule 23 settlement-only class for plaintiffs' KWPA claims and certified conditionally a settlement-only class under 29 U.S.C. § 216(b) of the FLSA, defined as: "all hourly Registered Nurses who performed work for Defendants at Menorah Medical Center between July 3, 2016 and February 28, 2019." *Id.*

With this Order, the court grants each additional request made by plaintiffs' renewed motion. Specifically, the court:

- preliminarily approves the parties' proposed class and collective action settlement;

- approves the form and manner of notice;

- schedules a hearing date for Final Settlement Approval on February 9, 2023; and

- approves the requested attorneys' fee award, litigation costs, settlement administrator fees, and class representative service awards.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' "Renewed and Consolidated Unopposed Motion for Order Preliminarily Approving Class and Collective Action Settlement, Attorneys' Fees Award, Litigation Costs, Settlement Administrator, and Class Representative Service Awards and Directing Notice to the Class and Scheduling Final Fairness Hearing" (Doc. 101) is granted.

**IT IS FURTHER ORDERED THAT** the court directs the parties to provide notice to the class and collective action members, consistent with the Order.

**IT IS FURTHER ORDERED THAT** the court schedules a Final Settlement Approval Hearing on February 9, 2023, at 11:00 a.m., Central Time, at the United States District Court for the District of Kansas, 500 State Avenue, Kansas City, Kansas 66101, Courtroom 476.

**IT IS SO ORDERED.**

**Dated this 21st day of November, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**